**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                    CRIMINAL ACTION NO. 2:07-cr-00192

JAMES MICHAEL NICHOLS,

                Defendant.

**MEMORANDUM OPINION**

        The defendant in this case was sentenced on June 23, 2008, to a term of imprisonment of 63 months to be followed by a three-year term of supervised release. The reasons for this sentence are set forth below.

**I.  Background**

        On December 12, 2006, defendant James Michael Nichols, a convicted felon, turned over five firearms to the West Virginia State Police. The defendant was subsequently indicted for and pleaded guilty to violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), which prohibit the possession of firearms by felons. The defendant entered his guilty plea on December 20, 2007.

        In the Presentence Investigation Report ("PSR"), the United States Probation Officer found the defendant's total offense level to be 23. The officer calculated this offense level by beginning with a base offense level of 24 pursuant to § 2K2.1(a)(2), which applies when the defendant's offense conduct occurred "subsequent to sustaining at least two felony convictions of either a crime

of violence or a controlled substance offense."[1]  U.S. Sentencing Guidelines Manual § 2K2.1(a)(2) (2007).  Following a two-point increase for the involvement of three to seven firearms, § 2K2.1(b)(1)(A), and a recommended three-level reduction for acceptance of responsibility under § 3E1.1, the officer set the defendant's total offense level at 23.  The officer then found a criminal history category of VI based on Chapter 5 of the Guidelines, yielding a guideline range of 92 to 115 months.

The defendant objects to the application of § 2K2.1(a)(2) and argues that § 2K2.1(a)(4)(A), which applies if the defendant has "one [prior] felony conviction of either a crime of violence or a controlled substance offense," should instead define his base offense level.[2]  More specifically, the defendant argues that his prior conviction for escape should not be considered a "crime of violence" under the Sentencing Guidelines.[3]  The defendant points out that his escape conviction was based on a walk-away escape in which he attempted, but failed, to return on time to the Charleston Work/Study Release Center from an authorized furlough.  (Def.'s Sentencing Mem. 1 [Docket 28].) Although the Fourth Circuit has held that even walk-away escapes are crimes of violence, *United States v. Mathias*, 482 F.3d 743 (4th Cir. 2007), *petition for cert. filed*, 76 U.S.L.W. 3046 (U.S. July 12, 2007) (No. 07-61),  the defendant asserts that the Supreme Court's recent decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), leads to the opposite result here.

---

[1] The prior felony convictions upon which the application of § 2K2.1(a)(2) is based are the defendant's 1987 conviction in the Circuit Court of Clay County, West Virginia for breaking and entering and his 1992 conviction in the Circuit Court of Kanawha County, West Virginia for escape.

[2] If § 2K2.1(a)(4)(A) applies, the defendant's base offense level would be 20.  With the remainder of the calculations the same, the defendant would have a total offense level of 19 with a criminal history category of VI, yielding a guideline range of 63 to 78 months.

[3] The defendant concedes that breaking and entering is a crime of violence.

-2-

II.     **Discussion**

      A.     <u>Applicable Law</u>

Under the U.S. Sentencing Guidelines, the term "crime of violence" is defined as:

[A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

The question of whether a particular crime constitutes a crime of violence is a categorical one "which takes into account only the [statutory] definition of the offense and the fact of conviction." *United States v. Pierce*, 278 F.3d 282, 286 (4th Cir. 2002) (citing *United States v. Kirksey*, 138 F.3d 120, 124 (4th Cir. 1998)); *see also Mathias*, 482 F.3d at 746 ("[W]e consider the nature of the offense as defined by statute, not the conduct and circumstances underlying a specific conviction."). When the statutory definition is insufficient to discern whether an offense is violent, courts may also "[look] at the charging document and the jury instructions," but must avoid inquiries into "facts previously presented and tried." *Pierce*, 278 F.3d at 286 (quoting *Kirksey*, 138 F.3d at 124-25).

In *Mathias*, the Fourth Circuit addressed the "question of whether escape qualifies as a 'violent felony' under the Armed Career Criminal Act ('ACCA') when the escape did not involve

force or violence."[4]  482 F.3d at 744.  Because the court found that the first clause of the violent

felony definition did not apply and that escape was not among the examples enumerated in the

second clause, it narrowed the question to whether the Virginia escape statute "'otherwise involves

conduct that presents a serious potential risk of physical injury to another.'"  *Id.* (quoting 18 U.S.C.

§ 924(e)(2)(B)(ii)).  Focusing on that issue alone, the court concluded that all escapes involve the

inherent danger of physical injury to others and that, therefore, all escapes should be treated as

violent felonies under the ACCA.[5]  *Id.* at 747.

 Since *Mathias* was decided, the Supreme Court handed down its decision in *Begay v. United*

*States*, which changes the approach courts must take in determining whether a particular crime

qualifies as a crime of violence.  The question in *Begay* was "whether driving under the influence

of alcohol [as defined by New Mexico] is a 'violent felony'" under the ACCA.  128 S. Ct. at 1583.

As in *Mathias*, the offense in question did not fall within the first clause of the violent felnoy

---

 [4] The definition of "violent felony" under the ACCA is nearly identical to the definition of
"crime of violence" under the Sentencing Guidelines.  *Compare* 18 U.S.C. § 924(e)(2)(B) *with*
U.S.S.G. § 4B1.2(a).  Because of this, courts frequently treat cases interpreting the term "violent
felony" from the ACCA as governing their understanding of the term "crime of violence" under the
Sentencing Guidelines.  *See, e.g.*, *United States v. Martin*, 215 F.3d 470, 474 n.4 (4th Cir. 2000)
("[O]ur reasoning regarding the meaning of 'violent felony' is relevant to determining the meaning
of 'crime of violence.'").  I follow this approach in this opinion.

 [5] A petition for certiorari has been filed in *Mathias*, 76 U.S.L.W. 3046 (U.S. July 12, 2007)
(No. 07-61), and is still pending before the Supreme Court.  Notably, the Supreme Court has
recently granted certiorari in a related case from the Seventh Circuit, *United States v. Chambers*.
128 S. Ct. 2046 (Apr. 21, 2008) (No. 06-11206).  According to the petition for certiorari, the
question in *Chambers* is "whether a defendant's failure to report for confinement 'involves conduct
that presents a serious potential risk of physical injury to another' such that a conviction for escape
based on that failure to report is a 'violent felony' within the meaning of the [ACCA]."  2007 WL
5117449, *i (May 8, 2007).  As the wording of the question indicates, the petition was filed prior
to *Begay*.  The Supreme Court granted certiorari, however, five days after handing down the *Begay*
decision.

definition and was not among the crimes enumerated in the second clause.  *Id.* at 1584.  Thus, the Court was confronted with the issue of how to interpret and apply clause (ii) of the violent felony definition.  The Court in *Begay* acknowledged that DUI "presents a serious risk of physical injury," but held, contrary to the approach followed by many courts, that risk of injury alone is insufficient to make a crime violent.  *Id.* at 1584-85 ("[T]he statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury.'" (emphasis in original) (citations omitted)), 1587-88 (rejecting the dissent's approach of considering all injury-risking felonies as violent felonies).

The *Begay* court read Congress' inclusion of enumerated offenses as imposing an *additional* limitation on clause (ii) violent crimes.  It held that courts should only classify as violent under clause (ii) those crimes that, in addition to posing a risk of injury, "are roughly similar, in kind as well as in degree of risk posed, to the examples [of burglary, arson, extortion, or crimes involving the use of explosives]."  *Id.* at 1585.  The Court indicated that the degree of similarity is gauged by comparing the offense in question to the example offenses, all of which "typically involve purposeful, 'violent,' and 'aggressive conduct.'"  *Id.* at 1586 (citations omitted).  Applying these principles, the Court stated that although DUI can be carried out purposefully, the offense does not require intentional action and is more appropriately characterized as a strict liability offense.  *Id.* at 1587.  The Court further found that DUI is categorically neither violent nor aggressive.  *Id.* (citing *United States v. Begay*, 470 F.3d 964, 980 (10th Cir. 2006) (McConnell, J., dissenting in part)).  These findings led the *Begay* court to conclude that DUI is "simply too unlike the provision's listed examples" to consider it a violent felony.  *Id.* at 1584.

B.    Analysis

The defendant correctly argues that *Begay* undermines the continued viability of *Mathias*. The holding in *Mathias* was based solely on the Circuit Court's finding that the conduct prohibited by the Virginia escape statute "presents a serious potential risk of physical injury," *Mathias*, 482 F.3d at 744, a finding that *Begay* held as alone insufficient to classify a crime as violent.  Since the *Mathias* court did not make the additional finding required by *Begay*, namely that escape is "roughly similar" to the listed offenses, the analysis conducted in *Mathias* is now incomplete.

The question in this case, therefore, is whether escape, as defined by West Virginia law, constitutes a "crime of violence" under the career offender provision of the U.S. Sentencing Guidelines post-*Begay*.  The West Virginia escape statute, in pertinent part, reads as follows: "Any person who escapes from the custody of the commissioner of corrections, regardless of where such person is confined or where such escape occurs, is guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not more than five years."  W. Va. Code § 61-5-12a.  The West Virginia statute, unlike some other states' escape statutes, imposes strict liability and does not draw legal distinctions between violent and non-violent escapes.

As the statute indicates, the crime of escape under West Virginia law does not fall within the first clause of the crime of violence definition, as it does not "[have] as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  Nor is it among the enumerated offenses in the second clause of the definition.  *Id.* § 4B1.2(a)(2).  As discussed above, *Begay* counsels that courts must undertake a two-part inquiry for crimes falling within this category.  First, courts must ask whether the offense, considered categorically, "involves conduct that presents a serious potential risk of physical injury to another."

-6-

*Begay*, 128 S. Ct. at 1584-85 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).  Second, courts must consider

whether the crime in question is "roughly similar, in kind as well as in degree of risk posed, to the

examples" contained in the second clause of the definition.  *Id.* at 1585.  Only if both questions are

answered affirmatively can courts find that an offense constitutes a crime of violence.  *See id.* at

1585-86 (stating that a crime's risk of injury is insufficient to make it a violent felony under clause

(ii) without the crime also being similar to the enumerated examples).

As to the first inquiry, I acknowledge that all forms of escape, violent or otherwise, present

a serious potential risk of injury.  Indeed, the Fourth Circuit has already reached this conclusion in

*Mathias*.  482 F.3d at 744-45, 747.  This portion of the *Mathias* decision has not been disturbed by

*Begay*, which only undermines *Mathias*' broader conclusion that the potential risk of injury is

enough to make escape a violent crime.  Accordingly, I **FIND** that escape, as defined by West

Virginia law, presents "a serious potential risk of physical injury" to others.[6]   U.S.S.G. §

4B1.2(a)(2).

The more central inquiry in this case is whether the crime of escape is "roughly similar, in

kind as well as in degree of risk posed," to the crimes of burglary of a dwelling, arson, extortion, or

crimes involving the use of explosives.  The Supreme Court characterized these offenses as

"typically involv[ing] purposeful, 'violent,' *and* 'aggressive' conduct."  *Begay*, 128 S. Ct. at 1586

(emphasis added) (citations omitted).  The Court indicated, "by way of contrast," that crimes that

---

[6] While I apply *Mathias*' holding that escape presents a serious potential risk of injury at the point of apprehension, I recognize the absence of empirical proof for such an assertion.  As one judge noted in a failure to report case, "we do not know the actual risks to law enforcement officers in recaptures following escapes," as there are "no statistics to support a conclusion that failure to report to jail presents a serious potential risk to the public or to the officers involved in the subsequent capture."  *United States v. Golden*, 466 F.3d 612, 615 (7th Cir. 2006) (Rovner, J., concurring).

"do not *insist on* purposeful, violent, and aggressive conduct" should not be considered similar to the enumerated offenses. *Id.* (emphasis added).[7]

The offense of escape under West Virginia law is not "roughly similar" to burglary of a dwelling, arson, extortion, or crimes involving explosives. To begin with, these listed offenses share several key characteristics that differentiate them from escape. First, the four enumerated crimes each involve inherent actions of trespass against persons, property, or both. Burglary involves the physical trespass upon another's property, *see, e.g.*, W. Va. Code § 61-3-11 (defining burglary of a dwelling as entering a dwelling "with intent to commit a crime therein"); arson involves conduct that trespasses upon and damages property and, potentially, persons, *see, e.g., id.* § 61-3-1 (defining arson as "set[ting] fire to or burn[ing] . . . any dwelling . . . or any outbuilding"); extortion involves a threatened trespass upon another person or their property, *see, e.g., id.* § 61-2-13 (defining extortion as "threaten[ing] injury to the character, person, or property of another . . . and thereby extort[ing] money"); and crimes using explosives involve trespass by destruction or attempted destruction of persons and property, *see, e.g., id.* § 61-3E-4 (criminalizing the "damag[ing] of property of another . . . by the use of a destructive device, explosive material, or incendiary device"). The Supreme Court in *Begay*, citing the legislative history of the ACCA, recognized that the listed offenses share a common thread of interference with others' persons or property:

---

[7] I read *Begay* to mean that it is insufficient for a crime to be purposeful *or* violent *or* aggressive for it to be considered similar to the listed offenses. In other words, the *Begay* court's use of the conjunctive language "purposeful, violent, *and* aggressive" should be read literally; a crime must involve conduct that reflects all three of these characteristics in order to be considered violent. If read disjunctively, *Begay* would produce troubling results because all purposeful crimes, regardless of their risk of violence, would be classified as "crimes of violence." I further read *Begay* to mean that a crime that *in some cases* involves purposeful, violent, and aggressive conduct cannot be considered violent. *Begay*'s language explicitly requires that a crime, as statutorily defined, must "insist on" such conduct to be considered violent.

> Prior to the enactment of the current language, the Act applied its enhanced sentence to offenders with "three previous convictions for robbery or burglary." Congress sought to expand that definition to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii)). When doing so, Congress rejected a broad proposal that would have covered *every* offense that involved a substantial risk of the use of "physical force against the person or property of another." Instead, it added the present examples.

128 S. Ct. at 1585-86 (emphasis in original) (internal citations omitted). Thus, each listed offense requires, as part of its definition, some intentional or threatened trespass against persons or property.

Second, each enumerated crime is "purposeful" in a sense beyond requiring intent. Burglary, arson, extortion, and crimes involving explosives all have as their *purpose* the infliction of harm. A defendant committing each of these crimes, in other words, has the *objective* to bring about harm to others or their property. In *Begay*, the Supreme Court acknowledged the deliberately harmful nature of the listed offenses by describing them as predictors of whether an offender will engage in future violent crimes. *See id.* at 1587 (noting that the listed crimes "show an increased likelihood that the offender . . . might deliberately point the gun and pull the trigger.") Finally, as the statutory definitions cited above indicate, the listed offenses each require the use of force.

Unlike the enumerated crimes, the definition of escape does not necessitate a trespass or other infringement against persons or property. Like DUI, escape is more akin to a public order crime because it generally victimizes society rather than individuals. Thus, the target of an escapee's wrong is unlike the target of the listed offenses, which primarily infringe the personal or property rights of others. Similarly, escape does not have as its *purpose* the imposition of harm against other individuals. Instead, the escapee's main objective is securing her own freedom. In the language of *Begay*, then, escape is not among the "crimes against the person . . . and certain physically risky crimes against property" that the crime of violence definition intends to cover, *id.*

at 1586, and is not the sort of crime that helps predict future violent offenses, *see id.* at 1587.  Lastly, the statutory definition of escape does not require the use of force.  Simple inaction, such as a failure to report, is sufficient to constitute escape under West Virginia law.  Escape is therefore utterly lacking in those characteristics that tie together the offenses enumerated in the crime of violence definition.

West Virginia's definition of escape, moreover, does not "insist on purposeful, violent, and aggressive conduct" as required by *Begay*.  Although some offenders prosecuted for escape act purposefully, the statute itself, like the DUI statute in *Begay*, imposes strict liability.  *See* W. Va. Code § 61-5-12a.  Escapees who purposefully break free from custody are treated the same as those who negligently or by mistake fail to report or are tardy in returning to custody.  Moreover, because the language of the West Virginia escape statute requires no particular behavior beyond the escape itself, the statute does not "insist on" either violent or aggressive conduct.  As a result, escapes prosecuted under this law may in some cases involve violence and aggression, but in other cases may not.  The crime of escape under West Virginia law, therefore, cannot be *categorically* defined as requiring "purposeful, violent, and aggressive" conduct.

Finally, the risk posed by escape is not "roughly similar, in kind as well as in degree," to the risks posed by burglary of a dwelling, arson, extortion, or crimes involving the use of explosives.  The above discussion indicates that the *kind* of risk created by escape is materially different from the enumerated examples of violent crimes.  The *degree* of risk posed by escape is also unlike the risk presented by the listed offenses.  First, many escape cases are based on omissions, rather than actions, by the offender.  In such cases, the offense conduct will not involve violence or aggression, and there will be a much less significant risk of violence arising from subsequent apprehension.

-10-

Second, the degree of risk associated with escape is generally thought to arise from the possibility of interruption or apprehension rather than from the act of escape itself.  This danger differs substantially from that involved with the listed offenses, which all require acts of aggression at their inception.  Therefore, the degree of risk posed by escape is significantly more attenuated than the risks inherent in burglary of a dwelling, arson, extortion, and crimes involving the use of explosives.

I conclude, to use the words of *Begay*, that escape "is simply too unlike the . . . listed examples . . . to believe that Congress intended the [definition of crime of violence] to cover it."  128 S. Ct. at 1584.  Accordingly, I **FIND** that escape, as defined by West Virginia law, is not "roughly similar" to the offenses enumerated in the second clause of the crime of violence definition, and that, therefore, escape is not a crime of violence under the United States Sentencing Guidelines.

C.    Recalculation of Guideline Range

Because the defendant's prior conviction for escape is not a crime of violence under the Sentencing Guidelines, his base offense level is 20 pursuant to § 2K2.1(a)(4)(A).  Following a two-point enhancement for the involvement of three to seven firearms, § 2K2.1(b)(1)(A), and a three-point reduction for acceptance of responsibility, § 3E1.1, the defendant's offense level is 19.  The defendant's criminal history is unaffected and is properly defined in the PSR as category VI.  A total offense level of 19 with a criminal history category of VI yields a guideline range of 63 to 78 months.

Even if I had found that Section 2K2.1(a)(2) applied to the defendant, I find that this section is not entitled to the same level of deference as other guidelines.  Like the career offender guideline, Section 2K2.1(a)(2) is an artificial guideline that does not reflect the common experiences of trial judges.  *Cf. Kimbrough v. United States,* 128 S. Ct. 558, 575 (stating that the crack cocaine

guidelines are not entitled to rigid deference because the Sentencing Commission, in promulgating them, "did not take account of empirical data and national experience" (internal quotations and citations omitted)).

Moreover, I have reached the sentence imposed based on a combination of numerous individual factors, all of which bear on the considerations outlined in 18 U.S.C. § 3553(a). These factors include: the type and number of guns involved, their storage location, the defendant's credible explanation as to his purpose for possessing the guns, the defendant's lack of education, his family circumstances, the need to hunt to provide food for his family, the nature and timing of the defendant's prior offenses, and the defendant's inability to comply with the law. These factors are as unique to Mr. Nichols as his fingerprint, and the sentence imposed reflects my consideration of each. Although the Sentencing Guidelines have here provided a useful roadmap for sentencing, they do not adequately account for such individualized factors. Thus, the application of § 2K2.1(a)(4)(A) (rather than § 2K2.1(a)(2)) does not change my finding that 63 months is an appropriate sentence for *this* defendant. I **FIND** that based on the history and characteristics of the defendant and the nature and circumstances of the offense, the sentence imposed is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to promote respect for the law.

## III.    Conclusion

After considering the advisory guideline range of 63 to 78 months and the factors outlined in 18 U.S.C. § 3553(a), I impose a term of imprisonment of 63 months followed by a three-year term of supervised release.

-12-

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal, and to publish the decision on the court's website at www.wvsd.uscourts.gov.

ENTER:      July 3, 2008

Joseph R. Goodwin, Chief Judge